**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 23-cv-2956 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| RADIUS GLOBAL INFRASTRUCTURE, | : **SECURITIES EXCHANGE ACT OF** |
| INC., WILLIAM H. BERKMAN, MICHAEL | : **1934** |
| D. FASCITELLI, NOAM GOTTESMAN, | : |
| WILLIAM D. RAHM, PAUL A. GOULD, | : **JURY TRIAL DEMANDED** |
| ANTOINETTE COOK BUSH, THOMAS C. | : |
| KING, NICK S. ADVANI, and ASHLEY | : |
| LEEDS, | : |
| | : |
| Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Radius Global Infrastructure, Inc. ("Radius Global or the "Company") and the members Radius Global's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Radius Global by affiliates of EQT Partners, Inc. ("EQT Partners") and Public Sector Pension Investment Board ("PSP").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on April 7, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Chord Merger Sub II, LLC ("Merger Sub II"), a wholly owned direct subsidiary of Chord Merger Sub I, Inc. ("Merger Sub I") will merge with and into APW OpCo LLC ("OpCo"), with OpCo surviving this transaction as a subsidiary of Chord Parent. Inc. ("Parent") and the Company; and Merger Sub I will be merged with and into the Company, with the Company surviving this merger as a subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 1, 2023 (the "Merger Agreement"), each Radius Global stockholder will receive $15.00 in cash (the "Merger Consideration") for each Radius Global share owned. Parent is an affiliate of EQT Partners and PSP.

3. As discussed below, Defendants have asked Radius Global's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Citigroup Global Markets Inc. ("Citi") and Goldman Sachs & Co. LLC ("Goldman Sachs" and together with Citi, the "Financial Advisors") in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Radius Global's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.  Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.  Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.  Plaintiff is, and has been at all relevant times, the owner of Radius Global stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant William H. Berkman has served as a member of the Board since February 2020 and is the Co-Chairman of the Board and the Company's Chief Executive Officer.

11. Individual Defendant Michael D. Fascitelli has served as a member of the Board since November 2017 and is the Co-Chairman of the Board.

12. Individual Defendant Noam Gottesman has served as a member of the Board since November 2017.

13. Individual Defendant William D. Rahm has served as a member of the Board since February 2020.

14. Individual Defendant Paul A. Gould has served as a member of the Board since.

15. Individual Defendant Antoinette Cook Bush has served as a member of the Board since February 2020.

16. Individual Defendant Thomas C. King has served as a member of the Board since February 2020.

17. Individual Defendant Nick S. Advani has served as a member of the Board since February 2020.

18. Individual Defendant Ashley Leeds has served as a member of the Board since November 2020.

19. Defendant Radius Global is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 3 Bala Plaza East, Suite 502, Bala Cynwyd, PA 19004. The Company's stock trades on the NASDAQ Global Select Market under the symbol "RADI."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

22. Radius Global, together with its subsidiaries, operates as an aggregator of rental streams underlying wireless and other communications infrastructure sites through the acquisition of real property interests and contractual rights in Italy, the United Kingdom, the United States, other European countries, and internationally. The Company purchases the right to receive future rental payments generated from an existing ground, rooftop, and other communications infrastructure lease; and acquires the rental streams by way of a purchase of a real property interest in the land underlying the wireless tower, antennae, and other essential communications infrastructure, including easements, usufructs, leasehold, and sub-leasehold interests or fee simple interests, as well as purchases contractual interests, such as an assignment of rents, in conjunction with the property interest or as a stand-alone right. It also provides other digital infrastructure sites. The Company was formerly known as Landscape Acquisition Holdings Limited and changed its name to Radius Global Infrastructure, Inc. Radius Global was founded in 2010 and is based in Bala Cynwyd, Pennsylvania.

23. On March 1, 2023, the Company announced the Proposed Transaction:

> NEW YORK--(BUSINESS WIRE)--Mar. 1, 2023-- Radius Global Infrastructure, Inc. (NASDAQ: RADI), ("Radius"), EQT and Public Sector Pension Investment Board ("PSP") announced today that they have entered into a definitive agreement under which EQT Active Core Infrastructure and PSP will indirectly acquire Radius for $15.00 per share in cash, representing a total enterprise value of approximately $3.0 billion.
>
> Radius is a leading global aggregator of real property interests underlying wireless telecommunications cell sites and other digital infrastructure assets. EQT is a purpose-driven global investment organization. PSP is one of Canada's largest pension investment managers.

The purchase price represents a premium of 28% over the unaffected closing price of Radius shares on February 24, 2023, and a premium of 31% to the volume-weighted average price of Radius shares over the last 90 days.

"This transaction is both an exciting next step for Radius and a great outcome for shareholders as it provides compelling value," said Bill Berkman, Co-Chairman and CEO of Radius. "Partnering in a private capital context with EQT and PSP, both of which have significant expertise in communications infrastructure, will enable Radius to accelerate origination activity and further invest in both geographic expansion and adjacent asset opportunities. I want to thank the incredible Radius team for their commitment and success in building the platform we have today. With EQT and PSP's support, we will continue to be a strong and collaborative partner for our tenants as we continue to grow Radius as the premier global aggregator and owner of digital infrastructure-oriented real property assets."

Alex Greenbaum, Partner within EQT Active Core Infrastructure's Advisory Team, said, "Radius is one of the market leaders in the aggregation of digital infrastructure sites and we believe it will benefit from long-term tailwinds supported by growing demand for data. This acquisition aligns directly with EQT Active Core Infrastructure's investment criteria and thematic approach to investing - Radius' strong cash flows, sticky customer base, geographically diverse portfolio and inflation protection make the Company a strong fit for the fund. We look forward to partnering with the entire Radius team as they continue their strong growth trajectory."

"PSP is thrilled to participate in this exciting acquisition of Radius Global Infrastructure," said Patrick Charbonneau, Senior Managing Director and Global Head of Infrastructure Investments at PSP. "Radius is a strong fit with PSP's portfolio and mandate given it has inflation-adjusted contracted income, little exposure to GDP, and substantial growth opportunities linked to demand for digital services. I want to thank EQT who brings valuable expertise to help this partnership reach its full potential and I look forward to working with the excellent management team at Radius to support their continued delivery of value-accretive products to their customers."

**Transaction Approvals and Timing**

The Radius Board of Directors, upon the recommendation of a Transaction Committee comprised of independent directors, has

unanimously approved the transaction, and the transaction is not subject to a financing condition. It is expected to close in the third quarter of 2023, subject to satisfaction of customary closing conditions including the receipt of certain regulatory approvals and approval by Radius shareholders, as well as certain other conditions related to Radius' indebtedness and available cash. Radius has obtained consents to the transaction from certain of its lenders. Certain Radius shareholders, including Mr. Berkman, Centerbridge Partners, L.P., Imperial Landscape Sponsor LLC, TOMS Acquisition II LLC and their respective affiliated entities, as applicable, have entered into agreements to vote their combined 21% ownership in favor of the transaction.

Upon completion of the transaction, Radius will be a privately held company indirectly wholly owned by EQT Active Core Infrastructure and PSP, as well as Radius management. Radius shares will no longer be listed on any public securities exchange. Radius will retain its name and brand and will continue to be operated by its existing management team and employees worldwide.

**Advisors**

Citi is serving as lead financial advisor, Goldman Sachs & Co. LLC is serving as financial advisor and Cravath, Swaine & Moore LLP is serving as legal advisor to Radius. Barclays is serving as financial advisor and Morris, Nichols, Arsht & Tunnel LLP is serving as legal advisor to the Transaction Committee of the Board of Directors of Radius.

Morgan Stanley & Co. LLC and Simpson Thacher & Bartlett LLP are serving as financial and legal advisors, respectively, to EQT Active Core Infrastructure. Evercore and Weil, Gotshal & Manges LLP are serving as financial and legal advisors, respectively, to PSP.

\* \* \*

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Radius Global's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.     **The Materially Incomplete and Misleading Proxy Statement**

25.    On April 7, 2023, Radius Global filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.    The Proxy Statement fails to provide material information concerning financial projections by Radius Global management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Radius Global management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Annualized In-Place Rents, Ground Cash Flow, Adjusted EBITDA, and Acquisition Capex, but fails to provide line items used to calculate these metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31. With respect to Citi's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the selected range of perpetuity growth rates of 3.00% to 3.50%; (iii) the inputs and assumptions underlying the discount rates ranging from 7.90% to 8.60%; (iv) the weighted cost of capital of the Company; (v) the net debt of the Company as of December 31, 2022; and (vi) the present value as of December 31, 2022 of Series A Founder Preferred Stock implied annual dividends; (vii) the inputs and assumptions underlying the cap rate of 5.9%; (viii) the number of shares of Company stock outstanding on a fully diluted basis as of February 28, 2023.

32. With respect to Citi's *Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the illustrative cap rates of 5.2% to 5.9%; (ii) the estimates of the adjusted annualized in-place rent of Radius for each of calendar years 2023 through 2032; (iii) the inputs and assumptions underlying the discount rate of 12.1%.

33. With respect to Citi's *Precedent Premiums Paid* analysis, the Proxy Statement fails to disclose: (i) the transactions selected by Citi for the analysis; (ii) the premia paid in those transactions; and (iii) the basis for selecting the representative range of premia.

34. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and

assumptions underlying the selected range of terminal growth rates of 3.0% to 3.5%; (iii) the inputs and assumptions underlying the discount rates ranging from 7.9% to 8.7%; (iv) the weighted cost of capital of the Company; (v) the net debt of the Company as of December 31, 2022; and (vi) the present value, as of December 31, 2022, of Series A Founder Preferred Stock implied annual dividends; (vii) the inputs and assumptions underlying the cap rate of 6.2%; (viii) the number of shares of Company stock outstanding on a fully diluted basis as of February 28, 2023; and (ix) the estimates of Radius Global's annualized in-place rent for each of calendar years 2022 through 2026.

35. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the implied enterprise value of Radius Global as of December 31, for each of calendar years 2022 through 2025; (ii) the inputs and assumptions underlying the illustrative cap rates ranging from 4.8% to 6.2%; (iii) the estimates of Radius Global's annualized in-place rent for each of the calendar years 2022 through 2025; (iv) the net debt of the Company for each of calendar years 2022 through 2025; (v) the projected year-end number of fully diluted outstanding shares of Class A Common Stock each of calendar years 2022 through 2025; and (vi) the inputs and assumptions underlying the illustrative discount rate of 11%.

36. With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions selected by Goldman Sachs for the analysis; and (ii) the premia paid in those transactions.

37. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### <u>COUNT I</u>

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

43. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Radius Global within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Radius Global, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of Radius Global, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Radius Global, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.   Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.   Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.   Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.   Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.   Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 7, 2023                                                              **MELWANI & CHAN LLP**

By:  */s/ Gloria Kui Melwani*
       Gloria Kui Melwani (GM5661)
       1180 Avenue of the Americas, 8th Fl.
       New York, NY 10036
       Telephone: (212) 382-4620
       Email: gloria@melwanichan.com

       *Attorneys for Plaintiff*